## Case No. 11,724.

### In re REYNOLDS.

### CARTER et al. v. McGEHEE et al.

[16 N. B. R. (1878) 158.] 1

District Court. W. D. North Carolina.

VENDOR AND PURCHASER — BOND FOR TITLE—ASSIGNMENT—BANKRUPTCY—SURETIES—REGISTRY—EQUITABLE INTERESTS—JUDGMENT LIENS.

1. In North Carolina a bond for title given on an executory contract for the purchase of lands conveys an equitable estate in the land to the vendee which is assignable.

2. An assignment of such estate to indemnify sureties, made without intent to delay or defraud creditors, is valid, and the assignee is entitled to priority over judgment creditors of the assignor.

3. Such assignment is valid although no money is paid; the debt upon which the sureties are liable furnishes a sufficient consideration to support it. It need not be registered in order to be available against creditors, unless the time limited by statute for the registration of the bond has expired.

4. Where the principal on a debt is insolvent, the sureties, in respect to their liability, are regarded in equity as creditors, and may retain any funds of the principal in their hands, even against an assignee for value, without notice.

5. An interest in lands, acquired at an administrator's sale, where the administrator has not made title, is assignable; and such assignment need not be registered under the laws of North Carolina in order to be valid against creditors.

6. Such equitable interest is liable to the liens of judgment creditors, subject to the equities of a surety of the debtor who holds a prior assignment thereof as indemnity for his liability.

On the 7th day of October, 1875, H. J. McGehee and others endorsed for Wm. P. Reynolds a note to the Planters' Bank of Danville for the sum of six thousand seven hundred and fifty dollars. On the same day McGehee took from Reynolds an assignment of a bond for title to a tract of land in Stokes county, in said district, which assignment was made to indemnify McGehee and the other sureties against loss upon the said note. The tract of land in Stokes county was valued at about eighteen hundred dollars, and there remained unpaid of the purchase money about one hundred dollars. At the same time said Reynolds, in writing, assigned to said McGehee to indemnify him and others, as aforesaid, his right to a title for two tracts of land in the town of Madison valued at five hundred and fifty dollars, for which all the purchase money had been paid. The said assignments were not recorded. Reynolds failed to pay the note to the Bank of Danville, and his sureties are liable for the same. Afterwards on November 25th and 26th, 1875, W. B. Carter, C. A. Reynolds and others obtained judgments against W. P. Reynolds, which were docketed in the counties of Rockingham and Stokes on the days mentioned. On the 27th day of November, 1875, W. P. Reynolds filed his petition in bankruptcy, and was thereafter adjudged a bankrupt. The following question was certified by the register for the opinion of the court: Is McGehee as assignee, as aforesaid, entitled to the proceeds of the real estate, before mentioned, as against the said judgment creditors?

Col. Jas. T. Morehead, for McGehee.

John H. Dillard and W. N. Mebane, for judgment creditors.

Boyd & Reid, for C. A. Reynolds, assignee.

DICK, District Judge. This is a controversy between judgment lien creditors and the sureties of a bankrupt, claiming under prior

---

1 [Reprinted by permission.]

assignments, executed by way of indemnity for their suretyship. The judgment creditors by docketing their judgments on the 25th and 26th days of November, 1875, acquired liens on all of the real property of the bankrupt situate in the counties where their judgments were docketed, whether the said property was or was not liable to sale under execution; but their liens were subject to all prior or superior equities, and to all subsequent paramount claims. Hoppock v. Shober, 69 N. C. 153; Murchison v. Williams, 71 N. C. 135. We must, therefore, consider whether the prior claims of McGehee et al. upon the interests of the bankrupt in the real property in controversy were valid and constituted legal or equitable rights equal or superior to the rights of said judgment creditors. On the 9th day of October, 1875, McGehee et al. became the sureties of the bankrupt on a debt to the Planters' Bank of Danville, and McGehee, by way of indemnity, received written assignments of the interest of the bankrupt in said real property. The rights of the parties accrued before the date of the adjudication in bankruptcy, and it was admitted on the argument that the transaction with the bank was not void under the 35th section of the bankrupt act [of 1867 (14 Stat. 534)], as being intended to hinder or delay creditors, or give a preference to a creditor on an antecedent debt. There is nothing in the bankrupt act, either in its language or object, that prevents an insolvent from dealing with his property—selling, exchanging, or pledging it—for other property, at any time before an adjudication of bankruptcy against him, provided such dealing be conducted without any purpose to defraud or delay his creditors, or give preference to any one, and does not impair the value of his estate. Cook v. Tullis, 18 Wall. [85 U. S.] 332; Tiffany v. Bootman Ins. Co., Id., 375; Clark v. Iselin, 21 Wall. [88 U. S.] 360.

We will, therefore, proceed to ascertain and determine what were the rights of the parties to this controversy under our state laws. What were the estates or interests which the bankrupt had on the 9th of October, 1875? He had contracted to purchase the lands in Stokes county, and had received a bond with covenant to make a title when the purchase money was paid. He had an equitable estate in the lands, but as the whole of the purchase money had not been paid to the vendor, such estate was not liable to sale under a fi. fa. Hinsdale v. Thornton, 75 N. C. 381. This estate was assignable, and was assigned to McGehee on the 9th of October by a written endorsement on the bond for title. This assignment being in writing, signed by the assignor, was not in violation of the statute of frauds. This assignment authorized the assignee, when his liability as surety became absolute by reason of the insolvency of the assignor, to complete the contract with the vendor by paying the balance due of the purchase money, and then demand the legal title. If the vendor refused to complete his part of the contract, then the assignee, in his own name (Code), by civil action, could have enforced the specific performance of the contract, or recovered judgment for damages assessed. Utley v. Foy, 70 N. C. 303. The consideration for the contract of assignment was sufficient, although no money was paid. It was made to indemnify the assignee as surety in the bank debt, and the debt of the creditor supplied the consideration to support the assignment. Wiswall v. Potts, 5 Jones, Eq. 184. As the principal in the bank debt is insolvent, his sureties, in respect to their liability, are in equity regarded as creditors as to rights and privileges, and may retain any funds of their principal in their hands, even against an assignee, for value, without notice. Battle v. Hart, 2 Dev. Eq. 31. We have seen that the interest of the bankrupt in the Stokes lands was not subject to a fi. fa., and the judgment creditors could not enforce their liens by such process. But suppose they could have sold, under execution, their rights, certainly, would not be superior to a purchaser under such sale.

It is a well settled doctrine that a purchaser at a sheriff's sale cannot protect himself against an equity, on the ground that he had not notice—for the sheriff can sell nothing but the interest in the estate which the defendant in the execution had at the time of sale. Reed v. Kinnaman, 8 Ired. Eq. 13. Neither of the parties to this controversy have a legal title. The creditors insist that they have a judgment lien upon an equitable estate. The sureties present a prior assignment of the same equitable estate. Now, if the equities were equal, the question of notice—express or constructive—would not arise, and the rights of the parties would depend upon priority. It is only the purchaser of a legal title, without notice of a prior equity, who can hold against such equity. Polk v. Gallant, 2 Dev. & B. Eq. 395; Winborn v. Gorrell, 3 Ired. Eq. 117; Shoffner v. Fogleman, Winst. Eq. 12. But the equities are not equal. The equity of McGehee is founded upon a contract in rem, and the equity of the creditors is derived from a lien by judgment. In such cases it is well settled that a claimant under a trust or contract in rem has acquired an equity to the specific thing which binds the conscience of the original holder, while a judgment creditor has not advanced his money on the specific security, and is entitled to his debtor's real interest alone, that is, his interest, subject to his equities as they exist at the date of the judgment. Adams, Eq. 149.

And further upon this point: The creditors acquired no estate by their liens, they could not even enforce their liens by execution, but only had a mere right to ask a court of equity to make their liens available against—first, the personal property of the debtor, and then the real property in possession of the debtor, or of creditors or purchasers who had not equal or superior equities. Murchi-

son v. Williams, supra. McGehee acquired the equitable estate by his assignment, made upon the consideration of incurring a responsibility for a large debt. Surely the holder of such an estate has a superior equity to those who only have rights to equitable relief arising by mere operation of law. Is the assignment of McGehee void as against general creditors, for the want of registration? The assignment is not in the form of a deed in trust, or mortgage, which are required to be registered, and are only valid against creditors or purchasers for a valuable consideration from the date of registration. Battle's Rev. St. c. 35, § 12. The assignment has the nature and effect of a mortgage—but all such instruments are not required to be registered under section 12, to make them valid against creditors. The bond for title in this case has the nature and effect of a mortgage; but its validity as against creditors does not arise at the date of registration. It is a contract for the sale of land, and must be registered within two years from date (Battle's Rev. St. c. 35, § 24), unless the time is extended by legislation on such subject. Its validity commenced at date, and the two years limitation had not expired. Edwards v. Thompson, 71 N. C. 177. As the bond for title was not required to be registered under section 12, I can see no reason why the assignment on the back of the bond should be subject to more rigid requirements. Mr. Moorehead, as counsel for McGehee, insists that the following well established principle is applicable to the question before us: He says that the purchaser of land at a sheriff's sale acquires the legal and equitable rights and title of the defendant in the execution, and may assign his rights either in writing or by parol (Testerman v. Poe, 2 Dev. & B. 103), and such assignment in writing need not be registered, although a contract relating to land. Mr. Moorehead further insists that the creditors have not liens upon the property in controversy as, under the Code, § 254 (Battle's Rev. St. 201), a docketed judgment only creates a lien upon "real property," that the interest of the bankrupt is not "real property," as defined in Code, § 388 (Battle's Rev. St. 239), but is a right which can only be enforced by civil action, and is included in the definition of personal property. Section 289. We will not pause in this place to consider the propositions and the ingenious argument of the learned counsel, as we do not consider the points presented as material in the decision of the question before us in this part of the case.

We will now consider the questions presented us in the other property in controversy. The lots in Madison had been sold by McGehee, as administrator, under a license of court, to pay the debts of his intestate. The bankrupt was the purchaser, and on the 9th of October, 1875, had paid all the purchase money, and an order had been made by the court for the said administrator to make title. The legal title was in the heirs at law of the intestate—the administrator had not completed the execution of the power with which he had been invested—and the bankrupt had an estate in equity, and a right to call on the administrator to complete the execution of his power by conveying the legal title. The written instrument executed to McGehee, by the bankrupt, was not an assignment of the estate in equity, but a mere agreement not to demand the legal title until McGehee was saved harmless from his liability as surety to the bank debt. It was a suspension of the right to call for the execution of the power with which McGehee was invested as an officer of the court. McGehee could never have made a title to himself, but upon paying the debt, or upon becoming absolutely responsible for the same by the insolvency of his principal, he could have applied to the state court, which had invested him with the power of selling and making title, and by a motion in the same could have obtained adequate relief. Evans v. Singletary, 63 N. C. 205; Mason v. Osgood, 64 N. C. 467. The equitable estate, being in the bankrupt, became liable to the liens of the docketed judgments, subject to the equity acquired by McGehee, founded upon his suretyship. As the insolvency of the bankrupt has been adjudicated by this court, and McGehee and his co-sureties have become absolutely responsible for the bank debt, McGehee is entitled in this court to enforce the equities acquired for the indemnity of himself and co-sureties.

It was insisted in the argument that the writing to McGehee should have been registered under section 2 (Battle's Rev. St. c. 35) to make it valid against creditors, etc. It was not a deed of trust or a mortgage, and conveyed no legal or equitable estate in land or title to other property, but conferred only a right to apply to a court exercising equitable jurisdiction for the relief above indicated. It was said that the transaction was at least the assignment of a chose in action. Grant this for the sake of the argument:—the assignment was not by deed of trust or mortgage, and only such assignments are included in section 12 of said statute. There are many choses in action which may be assigned as collateral security for a debt, and such assignments need not be registered. Doak v. State Bank, 6 Ired. 309. And further, if this was the assignment of a chose in action, the creditors cannot claim the benefit of liens, as the docketing of judgments only create liens on real property. If, then, this interest of the bankrupt was a chose in action, and the writing to McGehee was void for the want of registration, then the distribution of the proceeds of sale would be made among the general creditors—for in a court of bankruptcy, where there are no prior valid incumbrances or liens on the fund for distribution, the controlling maxim is, "Equality is equity."

After carefully considering the authorities cited in the argument, I am inclined to the opinion that the instruments which section 12 of the said statute requires to be registered to be valid against creditors are deeds of trust or mortgages of real or personal estate, which pass a property in the things conveyed from one person to another, and that said statute does not apply to instruments that give rise to a mere right to equitable relief. Thus a bond for title conveys no property from the vendor to the vendee, but creates only an equitable right. Upon payment of part of the purchase money by the vendee his right in equity is enlarged into an equitable estate to the extent of the payment, and when the whole of the purchase money is paid, the vendee has a complete equitable estate. The vendee is regarded in equity as the owner of the bond, and may at any time call for a conveyance of the legal title—yet the bond for title need not be registered under said section to make it valid against creditors of the vendor. Edwards v. Thompson, supra. The vendor might sell and convey the legal title to a purchaser for value, without notice, and thus destroy the equitable estate. Derr v. Dellinger, 75 N. C. 300. This, however, is an old and well established doctrine of equity, and does not arise in any way out of the section of the statute we are considering.

We will present another illustration of the principle we are discussing. A purchaser at sheriff sale acquires a right to the estate or interest of the defendant in the execution. This right he may transfer either by parol or in writing, and no registration is needed. If the purchaser has paid part of his bid, he acquires a sufficient title to stand as security for the money advanced, and the transaction, though not in writing and registered, is valid against a subsequent purchaser at execution sale unless intended to deceive creditors, etc. Testerman v. Poe, supra. We again repeat the self-evident principle that the rights of a creditor under a judgment lien cannot be greater against prior equities than the rights of a purchaser under an execution founded upon such judgment. We have seen that the purchaser of a legal title for valuable consideration, without notice—actual or constructive—is not bound by prior equities. But it is well settled that a purchaser at execution sale takes subject to the equities which the estate is liable to in the hands of the debtor, and this principle is especially enforced where the debtor only had an equitable estate. In many cases where these paramount equities were enforced against purchasers at execution sale, the contracts out of which such equities arose were not in writing (Vannoy v. Martin, 6 Ired. Eq. 169), and others were in writing but not registered under said sec. 12 (Henderson v. Hoke, 1 Dev. & B. Eq. 119; Freeman v. Hill, Id. 389; Polk v. Gallant, 2 Dev. & B. Eq. 395; Johnson v. Lee, Busb. Eq. 43; Rutherford v. Green, 2 Ired.

Eq. 121; Freeman v. Mebane, 2 Jones, Eq. 44; Shoffner v. Fogleman, supra; Hicks v. Skinner, 71 N. C. 539). If the equity of McGehee arose out of a deed in trust or a mortgage, then the question of notice—actual or constructive—would not be material, as no notice, however full, would supply the place of registration. Robinson v. Willoughby, 70 N. C. 358. But I am of the opinion that the instrument under which McGehee claims is not a deed of trust or mortgage as contemplated in section 12 of said statute, as it conveys no title to the equitable estate of the bankrupt. The estate was acquired under a decree of the court of probate, and creditors or purchasers could have at any time easily obtained information as to the state of the title. The covenant with McGehee was not intended to hinder or delay creditors, or give a preference to a creditor for an antecedent debt, and did not diminish the estate of the bankrupt, but was for the bona fide purpose of enabling the bankrupt to obtain money to discharge his indebtedness, and thereby save himself from insolvency.

I am, therefore, of the opinion that, independent of priority in date, the equity of McGehee is superior to the rights of the judgment creditors, and ought to be recognized and enforced in this court. The proceedings in bankruptcy have invested this court with full jurisdiction over the estate of the bankrupt, and over all parties interested in the same, and ought to ascertain, adjust, and determine the rights of such parties. The assignment and covenant made to McGehee were intended as indemnities against the bank debt, and such debt supplied the consideration of the transaction, and that debt has not been paid. The interest of the bank creditor is therefore the primary object to be protected in equity. Wiswall v. Potts, supra; First Nat. Bank v. Jenkins, 64 N. C. 719.

It is therefore considered and adjudged by the court that the assignee pay to the vendor the balance of the money due him on the Stokes lands, and then apply the balance of the proceeds arising from the sale of the real property in controversy in discharge of the bank debt, so as to indemnify McGehee and his co-sureties to the extent of such payment.